# UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NELSON CONSTRUCTION COMPANY, an Idaho corporation; and DONALD J. NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>The UNITED STATES operating through the UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, WESTERN FEDERAL LANDS HIGHWAY DIVISION,<br><br>Defendant. | ) | Case No. 05-1205C<br>(Judge Margaret M. Sweeney) |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COME NOW, the Plaintiffs, NELSON CONSTRUCTION COMPANY ("NELSON CONSTRUCTION") and DONALD J. NELSON ("NELSON"), by and through its counsel of record, the law firm of TROUT & NEMEC, PLLC, and submits the following in opposition to Defendant's Motion to Dismiss for lack of subject matter jurisdiction [Docket No. 11].

## I. Statement of the Issue

Whether this Court has subject matter jurisdiction of this controversy pursuant to the Tucker Act (28 U.S.C. 1491) because the government's failure to pay a valid contract assignee contract proceeds.

II. Statement of the Case

This case presents the Court with five interested parties each serving in multiple roles—Lemhi, Rod Ariwite, Travelers Casualty & Surety Company of America ("Travelers"), Donald J. "Jim" Nelson, and Nelson Construction.

Lemhi was the general contractor on the Project. In order to secure the Project, Lemhi needed the performance and payment bonds required by the Miller Act. Travelers obligated itself as the surety for Lemhi on both the performance and payment bonds.

Ariwite was the majority shareholder in Lemhi, a Director, and the President of Lemhi. Throughout the performance of the Project, Ariwite was in control of Lemhi.

Jim Nelson was involved in the Project in several different roles. As President of Nelson Construction, Mr. Nelson was an experience government contractor. Mr. Nelson was also a founder of the fledgling Lemhi. In addition, Nelson Construction served as one of the primary subcontractors on the Project. As a condition precedent to issuing the bonds to Lemhi for the Project, Travelers required Mr. Nelson and Nelson Construction to obligate themselves as indemnitors of Travelers on the performance and payment bonds for the Project. Complaint, ¶16.

Early on, the Project encountered difficulties. Ariwite began taking funds properly payable to subcontractors and suppliers and diverting them elsewhere. Nelson was among the subcontractors that were not paid. Nelson submitted claims to Travelers on the payment bond. Travelers gave notice to the government of the situation. The Project ground to a halt.

In order to get the Project back on track the interested parties met at Lucky Peak Reservoir to discuss the situation. At that meeting it was agreed that Travelers would take

assignment of the contract proceeds and that an informal takeover agreement would be utilized going forward.

Travelers accepted Assignment of the contract proceeds from Lemhi in writing. Complaint, ¶8 and Exhibit B. Travelers transmitted a copy of the Assignment to the government and the government signed and returned the Assignment to Travelers. *Id.*, ¶9 and Exhibit C. The Project was completed under the new arrangement with the government paying Travelers all contract proceeds until early 2003. *Id.*, ¶¶10,11, and 13.

On January 28, 2003, the government and Lemhi entered into a final settlement agreement on the Project. *Id.*, ¶11 and Exhibit D. The government then demonstrated to Ariwite how to change the payment provisions of the contract so that Ariwite could arrange to be paid the remaining contract proceeds directly. Ariwite changed the payment provision and without inquiry and despite the Assignment the government had been honoring, the government paid Ariwite the $614,270.67 directly. Ariwite took the contract proceeds and absconded.

Nelson Construction was owed more than $269,270.67 for compensation under Nelson Construction's Subcontract Agreement with Lemhi. Travelers was obligated to pay Nelson Construction this amount. *Id.*, ¶15. Because of the government's wrongful payment, Travelers was obligated to pay Nelson Construction from its own funds. However, Travelers also had a right to recover said funds from both: 1) the government pursuant to the valid Assignment; and 2) the indemnitors of the performance and payment bonds on the Project.

Nelson and Nelson Construction were indemnitors of the performance and payment bonds for the Project and hence liable to Travelers for any loss it had on the Project. *Id.*, Exhibit E. Accordingly, under the doctrine of equitable subrogation, Nelson and Nelson Construction "step into the shoes of" Travelers and can assert Travelers rights on their own behalf against the

government. In essence, Nelson and Nelson Construction became Travelers for the purposes of Travelers' claim against the government. This occurs not because of any agreement between Travelers, Nelson and Nelson Construction, but instead by operation of law.

Thus, Nelson and Nelson Construction are equitably subrogated to the rights of a valid contract assignee, and the Tucker Act confers jurisdiction in this Court.

## ARGUMENT

### I. Standard of Review

When deciding a motion to dismiss based upon lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### II. Jurisdiction Over this Controversy is Proper in this Court

Jurisdiction is proper in this Court under the Tucker Act (28 U.S.C. §1491) because Lemhi assigned its rights to the contract proceeds to Travelers. The Court has jurisdiction over Nelson and Nelson Construction's claims based on the doctrine of equitable subrogation and established case law.

### A. Tucker Act Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1491, which states in part:

> **(a)(1)** The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . .

28 U.S.C. § 1491 (West 2006). Plaintiffs' claims are predicated upon an express contract with the United States, Contract Number DTFH70-01-C-00017 ("Project"). Complaint, ¶3.

B. The Valid Assignment of Lemhi's Rights to Travelers.

There can be no doubt that Lemhi's rights to the contract proceeds for the Project were validly assigned to Travelers.

It was held in *Riviera Finance of Texas, Inc. v. U.S.*, 58 Fed.Cl. 528 (Fed.Cl. 2003) that the government by its words or conduct may waive the right to object to an invalid assignment through the government's recognition and ratification of the assignment.

> In sum, the Government's actions show a pattern of behavior consistent with recognition of the assignment. The Government was notified of the assignment by both parties, confirmed that it knew of the assignment without objecting to it, modified the contract in accordance with the requests of both assignor and assignee, and actually made payment under the contract as modified. Under the totality of the circumstances test, the Government's actions constitute recognition of an assignment. Because the Government recognized the assignment, it is obliged to fulfill its payment obligations under the contract as assigned. The Plaintiff is entitled to collect the amount due to it under the contract and the Government is not entitled to recover the payment made to Riviera.

*Id.*, 58 Fed.Cl. at 533.

> It is unnecessary to identify any one particular act as constituting recognition of the assignments by the Government. It is enough to say that the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments.
>
> *Tuftco,* 614 F.2d at 746. In *Tuftco* and subsequent cases, courts looked to a variety of factors to evaluate which party was favored by the totality of the circumstances, including whether: (1) the assignor and/or the assignee sent notice of assignment to the Government; (2) the contracting officer signed the notice of assignment; (3) the contracting officer modified the contract according to the assignment; and (4) the Government sent payments to the assignee pursuant to the assignment. *See id.* at 745-46; *D & H Distrib. Co.,* 102 F.3d at 546; *Banco Bilbao Vizcaya-Puerto Rico v. United States,* 48 Fed.Cl. 29, 34 (2000); *Norwest Bank Arizona v. United States,* 37 Fed.Cl. 605, 610 (1997); *American Nat'l Bank & Trust Co. of Chicago v. United States,* 22 Cl.Ct. 7 (1990); *American Fin. Assocs. v. United States,* 5 Cl.Ct. 761 (1984). While these factors are not meant to be exhaustive, and all need not be present in a given case, each is present in this case and deserves examination.

*Id.*, 58 Fed.Cl. at 530-531. Each of the factors identified above in the *Riviera Finance* decision are also present in the case at bar. In our case, the government signed an acceptance of the Assignment thus conceding notice of the Assignment. Complaint, ¶9 and Exhibit C. The government then modified the payment provision of the Prime Contract and paid Travelers based on the Assignment for a period of several months. Complaint, ¶10.

Given that the facts must be viewed as presented in the Complaint, *Riviera Finance's* factual similarity to the case at bar, and *Riviera Finance's* totality of the circumstances fact based rule; the government's motion must be denied. For the purposes of this motion, *Riviera Finance* is directly on point and Travelers is a valid assignee of the right to the contract proceeds.

Courts have also held the Tucker Act provides jurisdiction for the contract assignee and not just the original prime contractor.

> We conclude that the Tucker Act must be read to waive sovereign immunity for assignees as well as those holding the original claim, except as barred by a statutory provision such as the Anti-Assignment Act. No act here limits the right of subrogees to bring suit against the government, and thus sovereign immunity presents no barrier to such an action.

*Insurance Co. of the West v. U.S.*, 243 F.3d 1367, 1375 (C.A. Fed., 2001).

Accordingly, Travelers has a valid contract claim against the federal government and jurisdiction under the Tucker Act.

<u>C. Nelson and Nelson Construction are Travelers for the Purposes of Tucker Act Jurisdiction Pursuant to the Doctrine of Equitable Subrogation.</u>

Courts have consistently and broadly held that assignees and subrogees of the prime contractor have jurisdiction to sue in this Court pursuant to the Tucker Act. *Insurance Co. of West v. U.S.*, 55 Fed.Cl. 529, 533 (Fed.Cl.,2003); *Transamerica Ins. Co. v. U.S.*, 31 Fed. Cl. 532, 535 (1994) (*citing Aetna Casualty and Surety Co. v. United States,* 845 F.2d 971, 974

(Fed.Cir.1988) (citing *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 138, 83 S.Ct. 232, 235-36, 9 L.Ed.2d 190 (1962)); *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1161 (Fed.Cir.1985) (citing *Prairie State Bank v. United States,* 164 U.S. 227, 231, 17 S.Ct. 142, 144, 41 L.Ed. 412 (1896)); *Westech Corp. v. United States,* 20 Cl.Ct. 745, 749 (1990)).

Further, it has recently been made clear that for jurisdictional purposes, the focus is the claim, not the claimant.

> Applying this rationale to the waiver of sovereign immunity in the Tucker Act, the court concluded that the Act "contains an unequivocal expression waiving sovereign immunity as to claims, not particular claimants," and that the waiver of sovereign immunity was therefore not limited merely to the original claimant but could extend to a subrogee (who takes an assignment by operation of law) as well. *Id.* at 1373-74. Accordingly, the court concluded that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." *Id.* at 1375.

*Liberty Mut. Ins. Co. v. U.S.*, 70 Fed.Cl. 37, 53 (Fed.Cl. 2006). The claim in the instant case is based on contract rights of Lemhi as prime contractor on the Project. The claim to the contract proceeds was validly assigned to Travelers. When the government failed to pay Travelers, Travelers loss was passed to and the claimants became Nelson and Nelson Construction. However, the basis of the claim is still the payment of contract proceeds due on the prime contract.

In the latest statement on the subject, the *Nova Casualty* Court stated:

> In sum, the Tucker Act waives sovereign immunity for assignees, "and thus sovereign immunity presents no barrier" to a claim by a subrogee surety against the United States. *Id.*
>
> Accordingly, a surety that performs under a payment bond is subrogated to the rights of *both* the party who owed the debt, the contractor, and the party to whom the debt was owed, the subcontractor. Such a surety is thus entitled to any funds retained by the government under the contract but only after the government has satisfied any claims it might possess as a superior creditor. A surety in this position may invoke the Tucker Act as a jurisdictional predicate for a suit against the government because it stands in the shoes of the contractor for that purpose.

> . . .
>
> ***[B]ecause of the Tucker Act, "sovereign immunity represents no barrier" to an action by a subrogee against the government notwithstanding the Supreme Court's decision in Blue Fox.*** *Id.*

*Nova Cas. Co. v. U.S.*, 69 Fed.Cl. 284, 293-295 (Fed.Cl. 2006) (emphasis added).

Defendant cites *Kane v. U.S.,* 26 Ct. Cl. 655 (2001) for the proposition that an indemnitor entering into an indemnity agreement with the surety does not have jurisdiction for suit in this Court. Defendant's Motion to Dismiss, p. 7. However, *Kane* is not even factually similar to our case. The suit in *Kane* was initiated by a replacement contractor [Kane] hired by the bond surety. Kane was not a party to the take over agreement or involved with the original prime contract in any respect. *Kane,* 26 Ct. Cl. at 658. In our case Nelson and Nelson Construction were indemnitors of the bonds predating the prime contract. Nelson and Nelson Construction's right are acquired through operation of law and those rights belonged originally to the prime contractor. Nelson and Nelson Construction have jurisdiction based on the Tucker Act and the principles of equitable subrogation.

Defendant has provided no authority excepting indemnitors from access to the doctrine of equitable subrogation. In fact, the weight of authority holds the opposite, ***the "general equitable principle [is] that an indemnitor is entitled to be subrogated to the rights of a surety***.[FN2] . . ."

> FN2. See generally *Reid v. Pauley*, 121 F. 652 (9th Cir. 1903); *Massachusetts Bonding and Insurance Company v. Osborne*, 233 Cal.App.2d 648, 43 Cal.Rptr. 761 (1965); *Westerhold v. Carroll*, 419 S.W.2d 73 (Mo. 1967); *Longview School District No. 112 of Cowlitz County v. Stubbs Electric Co.*, 160 Wash. 465, 295 P. 186 (1931); *Stubbs Electric Co. v. Longview School District No. 112 of Cowlitz County*, 153 Wash. 33, 279 P. 86 (1929); 11 Appleman, Insurance Law and Practice § 6683 (1944).

*Dannerbeck v. Palmer*, 502 F.2d 686, 689 (9th Circ. 1974) (emphasis added). Because of their preexisting agreement to indemnify Travelers, Nelson and Nelson Construction were obligated to pay the loss to Travelers that Travelers was obligated to pay out under the payment and performance bonds. It is only a coincidence that Nelson Construction was the subcontractor that Travelers was obligated to pay.

Nelson and Nelson Construction are today still bearing the loss caused by the government's failure to pay Travelers the contract funds due Travelers. This loss is because of their status as indemnitors under the bonds. Their status as indemnitors under the bonds also provides Nelson and Nelson Construction with the jurisdictional basis for this lawsuit.

## CONCLUSION

Nelson and Nelson Construction's claims against the government are premised upon being equitably subrogated to the contract rights of Lemhi, the prime contractor on the Project. The case law clearly holds that the Tucker Act provides jurisdiction for such claims. Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

DATED this 29th day of May, 2006.

TROUT & NEMEC, PLLC

/s/

Kim J. Trout
P.O. Box 9695
Boise, Idaho 83707-3695
3067 East Copper Point Dr.
Meridian, Idaho 83642
Telephone: (208) 376-4461
Facsimile: (208) 376-4481

Attorneys for Plaintiffs,
NELSON CONSTRUCTION COMPANY
and DONALD J. NELSON