**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| NELSON CONSTRUCTION COMPANY, an Idaho corporation; and DONALD J. NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>The UNITED STATES operating through the UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, WESTERN FEDERAL LANDS HIGHWAY DIVISION,<br><br>Defendant. | Case No. 05-1205C<br>(Judge Margaret M. Sweeney) |

**AMENDED COMPLAINT**

COMES NOW the Plaintiffs, NELSON CONSTRUCTION COMPANY ("NCC") and DONALD J. NELSON ("NELSON"), by and through its counsel of record, Kim J. Trout and the law firm of TROUT ♦ JONES ♦ GLEDHILL ♦ FUHRMAN, P.A., and in claim against the UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, WESTERN FEDERAL LANDS HIGHWAY DIVISION ("Federal Highways"), complain and allege as follows:

**JURISDICTION**

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1491, the Tucker Act.

**GENERAL ALLEGATIONS OF FACT APPLICABLE TO ALL COUNTS**

1. Plaintiff NCC is a corporation in good standing duly organized under the laws of the State of Idaho with its principal place of business in Boise, state of Idaho.

2. Plaintiff NELSON is a resident of Ada County, state of Idaho and the owner of NCC.

3. In or about April of 2001, Defendant Federal Highways awarded Contract Number DTFH70-01-C-00017 to Lemhi Environmental Diversified, Inc. (hereinafter "Lemhi") as general contractor for work to be performed on a portion of Idaho State Highway 21 (hereinafter "Contract"). The project was also referred to as "ID PFH 82-1(1) Atlanta Road" (hereinafter "Atlanta Road Project" or "Project").

4. NCC was a subcontractor to Lemhi on the Project.

5. Rod Ariwite, a Native American Indian and member of the Lemhi Tribe, was the President of Lemhi and Ariwite sought NELSON's assistance as a Mentor, for purposes of obtaining Section 8 (a) set aside work for Lemhi, in conjunction with NCC.

6. Because Lemhi and Ariwite did not have sufficient assets to be bondable, NELSON and NCC agreed to obtain bonding through Travelers Casualty & Surety Company of America (hereinafter "Travelers"), and to act as indemnitors on said Bond.

7. Travelers, with NELSON's and NCC's assistance, became Lemhi's surety on the Performance Bond and Payment Bond on the Project (Exhibit A).

8. Soon after the Project began, Ariwite and Lemhi made application for payment to Federal Highways, including application for payment for work performed by NCC. Lemhi received payment for NCC's portion of the work, but Ariwite then created a false claim against NCC and thereafter refused to pay NCC funds that were due NCC on said Project in the Fall of 2001. NCC subsequently obtained an Idaho State Court Judgment which confirmed the falsity of Lemhi's claims and awarded NCC Judgment against Lemhi and Ariwite in the amounts of

$514,797.45 and $453,281.14 respectively, neither of which Judgments are apparently collectible to date.

9. NCC notified the Federal Highways Contracting Officer ("CO") and Federal Highways Staff Attorney of Lemhi's failure to pay NCC, and notified Federal Highways that Lemhi had made false applications for subsequent payment to Lemhi, through Ariwite, claiming that Lemhi had paid NCC when in fact, it had not.

10. On or about the fall of 2001, NCC made claim for payment upon the Miller Act Payment Bond issued by Travelers. Although Travelers recognized its contractual duty to pay NCC, it did not pay NCC under the Payment Bond provisions, in that Travelers and NCC recognized that Travelers would then seek payment back from NCC and NELSON and that such actions were a waste of effort given the indemnity status of NCC and NELSON.

11. At the conclusion of the fall construction season, NCC advised Lemhi, Federal Highways, both the CO and Staff Attorney, and Travelers that NCC would perform no further work on the Project unless alternative payment arrangements were made.

12. On May 22, 2002, Lemhi assigned to Travelers the "money due or to become due under the contract" for the Project (hereinafter "Assignment") (Exhibit B), for the express purposes and benefit of NCC and NELSON to assure that payment for future Project performance would be made to Travelers as an escrow holder for the benefit of NCC and NELSON.

13. On May 28, 2002 at 12:47 p.m., Federal Highways CO and Staff Attorney acknowledged receiving notice of the Assignment (Exhibit C), and Federal Highways CO and /or the Staff Attorney modified the payee conditions of the Contract to reflect the Assignment, to make future payments due under the Contract to Travelers for the express and implied intended

benefit of NELSON and NCC. The assignment to Travelers was made for the express and implied purpose of satisfying Lemhi's then present and future obligations to NCC for work on the Project.

14. The CO and/or the Staff Attorney had the express or implied authority to modify the payment provisions of the Contract for payment to Travelers pursuant to the Assignment, and Travelers, NELSON, and NCC relied upon the express or implied authority of the CO and/or the Staff Attorney for modification of the payment provisions for payment to Travelers pursuant to said Assignment.

15. Following the resumption of work on the Project in the Spring of 2002, from June until November 2002, Federal Highways paid, by EFT or otherwise, six consecutive payments pursuant to Lemhi Applications for Payment directly to Travelers, for monies due under the Contract, as agreed in the Assignment acknowledged by the Federal Highways CO and Staff Attorney.

16. Subsequent to the Project completion, Lemhi, NCC, and Federal Highways entered into negotiations for an equitable adjustment to the Contract for the purposes of compensating primarily NCC for additional costs due to a design error, which error was discovered during construction. The Federal Highways CO and Staff Attorney were directly involved in the equitable adjustment negotiations.

17. On or about January 28, 2003, Lemhi and Federal Highways entered into a Settlement Agreement whereby Lemhi agreed to settle all claims against Federal Highways related to the Project in exchange for $614,270.67 (Exhibit D).

18. Because of the Assignment, Travelers, not Lemhi, was entitled to receive the payment of said $614,270.67.

19. Despite having knowledge of the Assignment, and despite the CO and Staff Attorney's material participation in the modification of the payee provisions of the Contract agreeing to pay the Contract proceeds to Travelers, and despite Federal Highways' history of paying Travelers pursuant to the Assignment, the Federal Highways CO and/or Staff Attorney worked directly with Ariwite and Lemhi, and modified the payment arrangement to make EFT payment directly to a new bank account established by Ariwite in Utah, not previously used by Ariwite or Lemhi for this project. Thereafter with no notice to Travelers, NCC or NELSON, the CO and/or the Staff Attorney directed payment of the equitable adjustment to the Contract be made directly to the new bank account in Utah established by Lemhi, said payment in the amount of $614,270.67.

20. As a direct and proximate result of Federal Highways' wrongful payment to Lemhi instead of Travelers, Travelers was short the amount of $269,270.67 for payment to NCC as a subcontractor on the Project.

21. As the payment surety, Travelers owed NCC more than $269,270.67 for compensation under NCC Subcontract Agreement with Lemhi.

22. NELSON and NCC were indemnitors of the Performance Bond and Payment Bond for the Project pursuant to a General Agreement of Indemnity (Exhibit E).

23. As indemnitors of the Payment Bond and Performance Bond, NCC and NELSON were liable to Travelers for all liability of Travelers to NCC under the Payment Bond.

24. As indemnitors of the Payment Bond and the Performance Bond, NCC and NELSON are equitably subrogated to the rights of Travelers as assignee of the Contract proceeds.

25. By reason of the contract of suretyship, Travelers' rights as surety, the Assignment and the doctrine of equitable subrogation, Travelers, and as a result NCC and NELSON, are entitled to payment from Federal Highways in the amount of $269,270.67.

26. By reason of the rights of NELSON and NCC as intended beneficiaries of the modification of the payee provisions of the Contract pursuant to the Lemhi Assignment, NCC and NELSON, are entitled to payment from Federal Highways in the amount of $269,270.67.

27. All Exhibits referenced herein are incorporated by reference to the original Complaint, on file with the Court, as if set forth herein in their entirety.

**Count 1**

**WRONGFUL PAYMENT**

28. NCC and NELSON incorporate by reference the allegations contained in paragraphs 1 through 27 above, as though fully set forth herein.

29. Travelers, by reason of the Assignment, was entitled to payment from Federal Highways of all the monies due to Lemhi, including the equitable adjustment amount, paid under the Contract.

30. Despite Federal Highways' knowledge of Travelers' rights to the monies, Federal Highways, its CO and/or Staff Attorney willfully and intentionally deviated from the acknowledged payment arrangement which arrangement was specifically intended for the benefit of NCC and NELSON, and failed to pay said monies to Travelers, instead, wrongfully directing monies directly to Ariwite and Lemhi.

31. NCC and NELSON are equitably subrogated to Travelers' rights relating to Federal Highways' wrongful payment and have suffered damage in an amount not less than $269,270.67.

32. NCC and NELSON have been required to retain legal counsel to prosecute said claim and agreed to pay said legal counsel reasonable attorneys fees as part of this action.

**Count 2**

**EQUITABLE SUBROGATION**

33. NCC and NELSON incorporate by reference the allegations contained in paragraphs 1 through 32 above, as though fully set forth herein.

34. Travelers was obligated to pay NCC and other subcontractors and suppliers on the Project as the Miller Act Payment Bond surety.

35. NCC and NELSON, as the indemnitors of the Payment Bond and the Performance Bond, were obligated to pay Travelers for payments made by Travelers pursuant to the Payment Bond.

36. NCC and NELSON, as the equitably subrogated holders of Travelers' rights against Federal Highways, are entitled to payment from Federal Highways in the amount of $269,270.67.

**Count 3**

**THIRD PARTY BENEFICIARY**

37. NCC and NELSON incorporate by reference the allegations contained in paragraphs 1 through 36 above, as though fully set forth herein.

38. NCC and NELSON, as a condition to returning to the Project for completion in the spring of 2002, requested that Travelers assume the role of escrow holder for all payments due and payable to Lemhi under and pursuant to the Contract.

39. On May 22, 2002, Lemhi assigned its rights to payment under and pursuant to the Contract to Travelers. Federal Highways, through its CO and Legal Counsel, acknowledged and

agreed to the assignment to Travelers and understood that Travelers would be acting as an escrow agent for purposes of distributing payments to NCC and NELSON, as part of a class of creditor beneficiaries for present or future obligations of Lemhi on the Project, to be paid by and through Travelers, that would otherwise have been the responsibility of Lemhi.

40. Federal Highways knew, after having made six (6) consecutive payments to Travelers pursuant to the Assignment, that NCC and NELSON relied, and had a right to rely on the remaining Contract payments being made to Travelers as the escrow holder for purposes of paying NCC and NELSON's money due under and pursuant to the Contract.

41. Federal Highways, its CO and/or Staff Attorney, willfully and intentionally deviated from the payment arrangement pursuant to the Assignment to deprive and damage NCC and NELSON, all to NCC and NELSON's damage in a sum not less than $269,270.67.

**PRAYER FOR RELIEF**

WHEREFORE, NCC and NELSON pray for payment in the amount of $269,270.67 plus interest and costs, in addition to any other relief as the Court may in equity award.

DATED this 30th of October, 2006.

TROUT ♦ JONES ♦ GLEDHILL ♦ FUHRMAN, P.A.

Kim J. Trout
P.O. Box 1097
Boise, Idaho 83701
225 N. 9th St., Ste. 820
Boise, Idaho 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529

Attorneys for Plaintiffs,
NELSON CONSTRUCTION COMPANY and
DONALD J. NELSON