IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NELSON CONSTRUCTION COMPANY, AND DONALD J. NELSON, | ) | |
| Plaintiffs, | ) | No. 05-1205C |
| v. | ) | (Judge Margaret M. Sweeney ) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

Pursuant to Rule 16 and Appendix A, paragraph III, 4, of the Rules of the United States Court of Federal Claims ("RCFC"), the parties file the following joint preliminary status report:

(a) Jurisdictional Basis Upon Which Plaintiff Relies

Nelson Construction Company ("NCC"), and Donald J. Nelson ("Nelson"), and both collectively together as "Nelson," state that this Court possesses jurisdiction to entertain this action pursuant to the the Tucker Act, as amended, 28 U.S.C. § 1491. The Government contends that this Court does not possess jurisdiction to entertain equitable subrogation and wrongful payment claims brought by a subcontractor on a Government contract.

(b) Consolidation

The parties do not believe that this case should be consolidated with any other case.

(c) Bifurcation

The parties are not aware of any reason why liability and damages should be tried separately.

(d) Deferral

The parties do not believe that further proceedings in this action should be delayed

pending consideration of another case before this Court or any other tribunal.

(e) Remand/Suspension

The parties do not intend to request remand or suspension.

(f) Joinder

The parties do not believe that additional parties should be joined.

(g) Dispositive Motions

Nelson may file a motion for summary judgment as to certain legal issues more fully outlined below, including the applicability of equitable subrogation and the validity and legal effect of the assignment. The Government may file a motion to dismiss the equitable subrogation and wrongful payment claims for lack of jurisdiction, and a motion for summary judgment on the third-party beneficiary claim. While the parties agree that it is unlikely that other dispositive motions will be filed, the parties request that, on or before 30 days after the conclusion of discovery, they be allowed to file a status report regarding the appropriateness of filing any further dispositive motions.

(h) Relevant Issues

Plaintiff's Statement Regarding The Relevant Issues

Nelson's Factual Issues

1. Whether soon after the Project began, Ariwite and Lemhi made application for payment to Federal Highways, including application for payment for work performed by NCC.

2. Whether Lemhi received payment for NCC's portion of the work, but Ariwite then created a false claim against NCC and thereafter refused to pay NCC funds that were due NCC on said Project in the Fall of 2001.

3. Whether NCC subsequently obtained an Idaho State Court Judgment which confirmed the falsity of Lemhi's claims and awarded NCC Judgment against Lemhi and Ariwite in the amounts of $514,797.45 and $453,281.14 respectively, neither of which Judgments are apparently collectible to date.

4. Whether NCC notified the Federal Highways Contracting Officer ("CO") and Federal Highways Staff Attorney of Lemhi's failure to pay NCC, and notified Federal Highways that Lemhi had made false applications for subsequent payment to Lemhi, through Ariwite, claiming that Lemhi had paid NCC when in fact, it had not.

5. Whether at the conclusion of the fall construction season, NCC advised Lemhi, Federal Highways, both the CO and Staff Attorney, and Travelers that NCC would perform no further work on the Project unless alternative payment arrangements were made.

6. Whether on May 22, 2002, Lemhi assigned to Travelers the "money due or to become due under the contract" for the Project, for the express purposes and benefit of NCC and NELSON to assure that payment for future Project performance would be made to Travelers as an escrow holder for the benefit of NCC and NELSON.

7. Whether on May 28, 2002 at 12:47 p.m., Federal Highways CO and Staff Attorney acknowledged receiving notice of the Assignment, and Federal Highways CO and /or the Staff Attorney modified the payee conditions of the Contract to reflect the Assignment, to make future payments due under the Contract to Travelers for the express and implied intended benefit of NELSON and NCC.

8. Whether the assignment to Travelers was made for the express and implied purpose of satisfying Lemhi's then present and future obligations to NCC for work on the

Project.

9. Whether the Government's Staff Attorney had the express or implied authority to modify the payment provisions of the Contract for payment to Travelers pursuant to the Assignment, and Travelers, NELSON, and NCC relied upon the express or implied authority of the CO and/or the Staff Attorney for modification of the payment provisions for payment to Travelers pursuant to said Assignment.

10. Whether the Government knew, after making six (6) consecutive payments to Travelers pursuant to the Assignment, that NCC and Nelson relied, and had a right to rely on the remaining Contract payments being made to Travelers as the escrow holder for the purposes of paying NCC and Nelson the money due pursuant to the Contract.

11. Whether subsequent to the Project completion, Lemhi, NCC, and Federal Highways entered into negotiations for an equitable adjustment to the Contract for the purposes of compensating primarily NCC for additional costs due to a design error, which error was discovered during construction.

12. Whether despite having knowledge of the Assignment, and despite the CO and Staff Attorney's material participation in the modification of the payee provisions of the Contract agreeing to pay the Contract proceeds to Travelers, and despite Federal Highways' history of paying Travelers pursuant to the Assignment, the Federal Highways CO and/or Staff Attorney worked directly with Ariwite and Lemhi, and modified the payment arrangement to make EFT payment directly to a new bank account established by Ariwite in Utah, not previously used by Ariwite or Lemhi for this project.

13. Whether with no notice to Travelers, NCC or NELSON, the CO and/or the Staff

Attorney directed payment of the equitable adjustment to the Contract be made directly to the new bank account in Utah established by Lemhi, said payment in the amount of $614,270.67.

14. Whether as a direct and proximate result of Federal Highways' wrongful payment to Lemhi instead of Travelers, Travelers was short the amount of $269,270.67 for payment to NCC as a subcontractor on the Project.

15. Whether despite Federal Highways' knowledge of Travelers' rights to the monies, Federal Highways, its CO and/or Staff Attorney willfully and intentionally deviated from the acknowledged payment arrangement and failed to pay said monies to Travelers, instead, wrongfully directing monies directly to Ariwite and Lemhi.

16. Whether NCC and NELSON, as a condition to returning to the Project for completion in the spring of 2002, requested that Travelers assume the role of escrow holder for all payments due and payable to Lemhi under and pursuant to the Contract.

17. Whether on May 22, 2002, Lemhi assigned its rights to payment under and pursuant to the Contract to Travelers. Federal Highways, through its CO and Legal Counsel, acknowledged and agreed to the assignment to Travelers and understood that Travelers would be acting as an escrow agent for purposes of distributing payments to NCC and NELSON, as part of a class of creditor beneficiaries for present or future obligations of Lemhi on the Project, to be paid by and through Travelers, that would otherwise have been the responsibility of Lemhi.

Nelson's Legal Issues

1. Whether an indemnitor of performance and payment bonds is equitably subrogated to the rights of the bond surety.

2. Whether because of the Assignment, Travelers, not Lemhi, was entitled to receive the

payment of said $614,270.67 on behalf of subcontractors including NCC and Nelson as intended beneficiaries.

3. Whether Lemhi validly assigned to Travelers the right to receive payment of $614,270.67.

4. Whether as payment surety, Travelers owned NCC more than $269,270.67 for compensation under the NCC Subcontract Agreement with Lemhi.

5. Whether as indemnitors of the Payment Bond and Performance Bond, NCC and NELSON were liable to Travelers for all liability of Travelers to NCC under the Payment Bond.

6. Whether as indemnitors of the Payment Bond and the Performance Bond, NCC and Nelson are equitably subrogated to the rights of Travelers as assignee of the Contract proceeds.

7. Whether by reason of the contract of suretyship, Travelers' rights as surety, the Assignment and the doctrine of equitable subrogation, Travelers, and as a result NCC and NELSON, are entitled to payment from Federal Highways in the amount of $269,270.67.

8. Whether by reason of the rights of NELSON and NCC as intended beneficiaries of the modification of the payee provisions of the Contract pursuant to the Lemhi Assignment, NCC and NELSON, are entitled to payment from Federal Highways in the amount of $269,270.67.

9. Whether NCC and NELSON are equitably subrogated to Travelers' rights relating to Federal Highways' wrongful payment and have suffered damage in an amount not less than $269,270.67.

10. Whether Travelers was obligated to pay NCC on the Project as the Miller Act

Payment Bond surety.

11. Whether Travelers was obligated to pay NCC on the Project as the Miller Act Performance Bond surety.

12. Whether NCC and NELSON, as the indemnitors of the Payment Bond and the Performance Bond, were obligated to pay Travelers for payments made by Travelers pursuant to the Payment Bond.

13. Whether NCC and NELSON, as the indemnitors of the Payment Bond and the Performance Bond, were obligated to pay Travelers for payments made by Travelers pursuant to the Performance Bond.

14. Whether NCC and NELSON, as the equitably subrogated holders of Travelers' rights against Federal Highways, are entitled to payment from Federal Highways in the amount of $269,270.67.

15. Whether Travelers, by reason of the assignment, was entitled to payment from the Government of all monies due to Lemhi, including the equitable adjustment amount, paid under the Contract.

16. Whether as the payment surety and/or as the assignee from Lemhi, Travelers owed NCC more than $269,270.67 for compensation under NCC Subcontract Agreement with Lemhi.

17. Whether the Government, its CO and/or Staff Attorney, willfully and intentionally deviated from the payment arrangement pursuant to the Assignment to deprive and damage NCC and NELSON, all to NCC and NELSON's damage in a sum not less than $269,270.67.

Defendant's Statement Regarding The Relevant Issues

Government's Factual Issues

1. Whether Nelson advised the Government that Nelson would perform no further work as a subcontractor under the contract between the Government and Lemhi Environmental Diversified, Inc. ("Lemhi") unless alternative payment arrangements were made.

2. Whether Lemhi executed an assignment of payments due to Lemhi under the contract with the Government for the express or implied benefit of Nelson.

3. Whether Nelson was entitled to the $614,270.67 that the Government agreed to pay to Lemhi in settlement of all claims Lemhi had under the contract after completion of the contract.

4. Whether Nelson agreed that it was entitled to $345,000.00 in settlement of all claims it had against Lemhi in connection with its work as a subcontractor to Lemhi under the contract.

5. Whether Nelson received the $345,000.00, that it claimed it was due from the settlement amount for its work under the contract.

6. Whether the Government reasonably believed that Nelson was owed only $345,000 by Lemhi at the time that the settlement amount of $614,207.67 was disbursed.

7. Whether the Government was aware that Nelson had an outstanding judgment against Lemhi for in excess of $269,270.67 at the time that the settlement proceeds of $269,270.67 were disbursed to Lemhi.

Government's Legal Issues

1. Whether this Court possesses jurisdiction to entertain Nelson's causes of action

premised upon principles of assignment and equitable subrogation for damages resulting from an improper payment made by the Federal Highway Administration ("agency") given that Nelson was neither an assignee nor a surety in connection with the subject contract.

2. Whether this Court possesses jurisdiction to entertain an equitable subrogation claim brought by a subcontractor on a Government contract.

3. Whether this Court possesses jurisdiction to entertain a wrongful payment claim brought by a subcontractor on a Government contract.

4. Whether Nelson, as indemnitor of the payment and performance bonds, was equitably surrogated to the rights of the surety as assignee of payments due to Lemhi under the contract.

5. Whether Nelson can demonstrate that it was the third-party beneficiary of a contract between the United States and Lemhi.

6. Whether Nelson can demonstrate that if the surety had received the $269,270.67 of the settlement amount, the surety would have paid that amount to Nelson.

7. Whether Nelson can demonstrate that the Government was aware, prior to the disbursement of the $269,270.67 settlement amount to Lemhi, that Nelson was owed the $269,270.67 by Lemhi.

(i) Advisability of ADR

The Government does not believe that it is currently in a position to pursue fruitful settlement discussions. The Government, therefore, does not believe that ADR is appropriate at this time. The parties will, however, continue to consider the possibility of settlement, and the use of ADR, throughout the proceedings.

Nelson believes that ADR is almost always productive, would be productive in this matter, and should be pursued immediately.

(j) Possibility of Trial

If this case does not settle, or is not otherwise resolved upon dispositive motion, the parties will proceed to trial, which is expected to last from three to five seven days. The parties agree that an expedited trial pursuant to paragraph 4(j) of Appendix A is not warranted. The Government believes that the earliest date that it could reasonably be expected to be ready for trial is March 2008. The Government requests that the trial be held in Vancouver, Washington.

Nelson believes that the earliest it could be ready for trial is in December 2007. Nelson requests that the trial be held in Boise, Idaho.

Joint Proposed Schedule

Exchange of documents by April 1, 2007.

Service of interrogatories and requests for admissions by May 1, 2007.

Completion of fact witness discovery by September 1, 2007.

Filing of dispositive motions by October 1, 2007.

(k) Electronic Filing

The parties are not aware of any special issues regarding electronic case management needs.

(l) Additional Information

The parties are unaware of any other matters which should be brought to the Court's attention at this time.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Kim J. Trout, Esq./
KIM J. TROUT, ESQ.
Trout, Jones, Gledhill & Fuhrman, P.A.
P.O. Box 1097
225 North 9th Street, Suite 820
Boise, ID 83701
(208) 331-1170
(208) 331-1529 (Fax)

Attorney for Plaintiff

Dated: January 26, 2007

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

Attorneys for Defendant

Dated: January 26, 2006