**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| NELSON CONSTRUCTION COMPANY, an Idaho corporation; and DONALD J. NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>The UNITED STATES operating through the UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, WESTERN FEDERAL LANDS HIGHWAY DIVISION,<br><br>Defendant. | ) | Case No. 05-1205C<br>(Judge Margaret M. Sweeney) |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS [DOCKET #26]

COMES NOW the Plaintiffs, NELSON CONSTRUCTION COMPANY ("NCC") and DONALD J. NELSON ("NELSON"), by and through its counsel of record, the law firm of TROUT ♦ JONES ♦ GLEDHILL ♦ FUHRMAN, P.A., and submits the following in opposition to Defendant's Motion to Dismiss for lack of subject matter jurisdiction [Docket No. 26].

I. Statement of the Issue

Whether this Court has subject matter jurisdiction of this controversy pursuant to the Tucker Act (28 U.S.C. 1491) based on the government's failure to pay a valid contract assignee contract proceeds and the doctrine of equitable subrogation, which subrogates NCC and Nelson to the rights of Travelers (both the assignee of the contract proceeds and the performance bond and payment bond surety) by operation of law.

II. Statement of the Case

This case presents the Court with four interested parties each serving in multiple roles—Lemhi Environmental Diversified, Inc. ("Lemhi"); Rod Ariwite ("Ariwite"); Travelers Casualty & Surety Company of America ("Travelers"), Donald J. "Jim" Nelson; and Nelson Construction Company. Amended Complaint (Document 21-1), ¶¶1-7.

Lemhi was the general contractor on the Project. Amended Complaint (Document 21-1), ¶3. In order to secure the Project, Lemhi needed the performance and payment bonds required by the Miller Act. Travelers served as the surety for Lemhi on both the performance and payment bonds. Amended Complaint (Document 21-1), ¶¶6-7.

Ariwite was the majority shareholder in Lemhi, a director, and the President of Lemhi. Throughout the performance of the Project, Mr. Ariwite was in control of Lemhi.

Jim Nelson was uniquely situated in several different roles in this Project. As President of Nelson Construction Company, Mr. Nelson was an experience government contractor. Mr. Nelson was a founder of the fledgling Lemhi. Nelson Construction also served as one of the primary subcontractors on the Project. Travelers also required Mr. Nelson and Nelson Construction to obligate themselves as indemnitors for Travelers on the performance and payment bonds for the Project as a condition precedent to issuing the bonds. Amended Complaint (Document 21-1), ¶¶4, 6-7.

Early on the Project encountered difficulties. Mr. Ariwite began taking funds properly payable to subcontractors and suppliers and diverting them to other, as yet unknown locations. Nelson was among the subcontractors that were not paid. Nelson submitted claims to Travelers on the payment bond. Travelers gave notice to the government of the situation. The Project ground to a halt. Amended Complaint (Document 21-1), ¶¶8-9, 11.

Travelers accepted Assignment of the contract proceeds from Lemhi. Travelers transmitted a copy of the Assignment to the government and the government signed and returned the Assignment to Travelers. The Project was completed under the new arrangement with the government paying Travelers all contract proceeds until early 2003. Amended Complaint (Document 21-1), ¶¶12-15.

On or about January 28, 2003, the government and Lemhi entered into a final settlement agreement on the Project. Amended Complaint (Document 21-1), ¶17. The government then demonstrated to Ariwite how to change the payment provisions of the contract so that Ariwite could arrange to be paid the remaining contract proceeds directly. Ariwite changed the payment provision and the government, without inquiry, paid Mr. Ariwite the money directly. Ariwite took the contract proceeds and disappeared. All of this happened without notice to the assignee of the contract proceeds, Travelers. Amended Complaint (Document 21-1), ¶19.

The government states that Travelers refused to pay Nelson because Nelson was an indemnitor on the payment bond and, as such, was liable to Travelers for Travelers' liability under the payment bond. Document 26, p. 3. Such is not the case. The parties recognized Travelers contractual duty to pay Nelson Construction. Amended Complaint (Document 21-1), ¶10. However, because of the doctrine of equitable subrogation Nelson, Nelson Construction and Travelers recognized there was no need to engage in the wasted effort of writing checks back and forth. Id.

## ARGUMENT

I. Standard of Review

When deciding a motion to dismiss based upon lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

II. Jurisdiction Over this Controversy is Proper in this Court

Jurisdiction is proper in this Court for several independent reasons. First, under the Tucker Act (28 U.S.C. §1491) there is jurisdiction because Lemhi assigned its rights to the contract proceeds to Travelers. Second, this Court has jurisdiction under the Tucker Act because Travelers was an express third party beneficiary of the prime contract. Third, this Court has jurisdiction under the Tucker Act because Travelers has express and implied contracts with the government. Fourth, this Court has jurisdiction under the Tucker Act based on the doctrine of equitable subrogation.

A. Tucker Act Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1491, which states in part:

> **(a)(1)** The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States…

28 U.S.C. § 1491 (West 2006). Plaintiffs' claims are predicated upon an express contract with the United Stated, Contract Number DTFH70 ("Project"). Complaint, ¶3. The government argues that a substantive right for money damages against the United States must be identified. Document 26, p. 4. Nelson and NCC's substantive right to enforcement is the Contract itself.

B. The Valid Assignment of Lemhi's Rights to Travelers.

There can be no doubt that Lemhi's rights to the contract proceeds for the project were validly assigned to Travelers.

It was held in *Riviera Finance of Texas, Inc. v. U.S.,* 58 Fed.Cl. 528 (Fed.Cl. 2003) that the government by its words or conduct may waive the right to object to an invalid assignment through the government's recognition and ratification of the assignment. The *Riviera Finance* Court could have been speaking about our situation when it stated the following:

> In sum, the Government's actions show a pattern of behavior consistent with recognition of the assignment. The Government was notified of the assignment by both parties, confirmed that it knew of the assignment without objecting to it, modified the contract in accordance with the requests of both assignor and assignee, and actually made payment under the contract as modified. Under the totality of the circumstances test, the Government's actions constitute recognition of an assignment. Because the Government recognized the assignment, it is obliged to fulfill its payment obligations under the contract as assigned. The Plaintiff is entitled to collect the amount due to it under the contract and the Government is not entitled to recover the payment made to Riviera.

Id., 58 Fed.Cl. at 533.

> It is unnecessary to identify any one particular act as constituting recognition of the assignments by the Government. It is enough to say that the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments.
>
> *Tuftco,* 614 F.2d at 746. In *Tuftco* and subsequent cases, courts looked to a variety of factors to evaluate which party was favored by the totality of the circumstances, including whether: (1) the assignor and/or the assignee sent notice of assignment to the Government; (2) the contracting officer signed the notice of assignment; (3) the contracting officer modified the contract according to the assignment; and (4) the Government sent payments to the assignee pursuant to the assignment. *See id.* at 745-46; *D & H Distrib. Co.,* 102 F.3d at 546; *Banco Bilbao Vizcaya-Puerto Rico v. United States,* 48 Fed.Cl. 29, 34 (2000); *Norwest Bank Arizona v. United States,* 37 Fed.Cl. 605, 610 (1997); *American Nat'l Bank & Trust Co. of Chicago v. United States,* 22 Cl.Ct. 7 (1990); *American Fin. Assocs. v. United States,* 5 Cl.Ct. 761 (1984). While these factors are not meant to be

> exhaustive, and all need not be present in a given case, each is present in this case and deserves examination.

*Riviera Finance of Texas, Inc. v. U.S.*, 58 Fed.Cl. 528, 530-531 (Fed.Cl., 2003).

Each of the factors identified above in the *Riviera Finance* decision are also present in the case at bar. In our case, the government signed an acceptance of the Assignment thus conceding notice of the Assignment. Amended Complaint (Document 21-1), ¶13 and Exhibit C. The government then modified the payment provision of the Prime Contract and paid Travelers the progress payments contract proceeds six times consecutively based on the Assignment from June until November 2002. Amended Complaint (Document 21-1), ¶15.

Given that the facts must be viewed as presented in the Complaint, *Riviera Finance's* factual similarity to the case at bar, and *Riviera Finance's* totality of the circumstances fact based rule; the government's motion must be denied. For the purposes of this motion, *Riviera Finance* is directly on point and Travelers is a valid assignee of the right to the contract proceeds.

Courts have also held the Tucker Act provides jurisdiction for the contract assignee and not just the original prime contractor.

> We conclude that the Tucker Act must be read to waive sovereign immunity for assignees as well as those holding the original claim, except as barred by a statutory provision such as the Anti-Assignment Act. No act here limits the right of subrogees to bring suit against the government, and thus sovereign immunity presents no barrier to such an action.

Insurance Co. of the West v. U.S. 243 F.3d 1367 (2001), *1370 -1371 (C.A.Fed.,2001)

Accordingly, Travelers has a valid contract claim against the federal government and jurisdiction under the Tucker Act.

C. Nelson and Nelson Construction are Travelers for the Purposes of Tucker Act Jurisdiction Pursuant to the Doctrine of Equitable Subrogation.

Courts have consistently and broadly held that assignees and subrogees of the prime contractor have jurisdiction to sue in this Court pursuant to the Tucker Act. *Insurance Co. of West v. U.S.*, 55 Fed.Cl. 529,533 (Fed.Cl.,2003); *Transamerica Ins. Co. v. U.S.,* 31 Fed. Cl. 532, 535 (1994) (*citing Aetna Casualty and Surety Co. v. United States,* 845 F.2d 971, 974 (Fed.Cir.1988) (*citing Pearlman v Reliance Ins. Co.,* 371 U.S. 132, 138, 83 S.Ct. 232, 235-36, 9 L.Ed.2d 190 (1962)); *Balboa Ins Co. v. United States,* 775F.2d 1158, 1161 (Fed.Cir.1985) (citing *Prairie State Bank v. United States* 164 U.S. 227, 231, 17 S.Ct. 142, 144, 41 L.Ed. 412 (1896)); *Westech Corp.v. United States,* ,20 Cl.Ct. 745, 749 (1990)).

Further, it has recently been made clear that for jurisdictional purposes, the focus is the claim, not the claimant.

> Applying this rationale to the waiver of sovereign immunity in the Tucker Act, the court concluded that the Act "contains an unequivocal expression waiving sovereign immunity as to claims, not particular claimants," and that the waiver of sovereign immunity was therefore not limited merely to the original claimant but could extend to a subrogee (who takes an assignment by operation of law) as well. *Id.* at 1373-74. Accordingly, the court concluded that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." *Id.* at 1375.

*Liberty Mut. Ins. Co. v. U.S.*, 70 Fed.Cl. 37, *53 (Fed.Cl.,2006). The claim in the instant case is based on contract rights of Lemhi as prime contractor on the Project. The claim to the contract proceeds was validly assigned to Travelers. When the government failed to pay Travelers, Travelers loss was passed to Nelson and Nelson Construction. However, the basis of the claim is still the payment of contract proceeds due on the prime contract.

In the latest statement on the subject, the *Nova Casualty* Court stated:

> In sum, the Tucker Act waives sovereign immunity for assignees, "and thus sovereign immunity presents no barrier" to a claim by a subrogee surety against the United States. *Id.*
>
> Accordingly, a surety that performs under a payment bond is subrogated to the rights of *both* the party who owed the debt, *294 the contractor, and the party to whom the debt was owed, the subcontractor. Such a surety is thus entitled to any funds retained by the government under the contract but only after the government has satisfied any claims it might possess as a superior creditor. A surety in this position may invoke the Tucker Act as a jurisdictional predicate for a suit against the government because it stands in the shoes of the contractor for that purpose.

> ***[B]ecause of the Tucker Act. "sovereign immunity represents no barrier" to an action by a subrogee against the government notwithstanding the Supreme court's decision in Blue Fox. Id***

*Nova Cas. Co. v. U.S.*, 69 Fed.Cl. 284 (2006), *293 -294 (Fed.Cl., 2006) (emphasis added).

Defendant cites *Kane v. U.S.*, 26 Ct. Cl. 655 (2001) for the proposition that an indemnitor entering into an indemnity agreement with the surety does not have jurisdiction for suit in this Court. Defendant's Motion to Dismiss, p. 7. However, *Kane* is not factually similar to our case. The suit in *Kane* was initiated by a replacement contractor [Kane] hired by the bond surety. Kane was not a party to the take over agreement or involved with the original prime contract in any respect. *Kane,* 26 Ct. Cl. At 658. In our case Nelson and Nelson Construction were indemnitors of the bonds pre-dating the prime contract. Nelson and Nelson Construction's right are acquired through operation of law and those rights belonged originally to the prime contractor. Nelson and Nelson Construction have jurisdiction based on the Tucker Act and the principles of equitable subrogation.

> Defendant has provided no authority excepting indemnitors from the access to the doctrine of equitable subrogation. In fact, the weight of authority holds the opposite, ***the "general equitable principle [is] that an indemnitor is entitled to be subrogated to the rights of a surety.*** …"
>
> FN2. See generally *Reid v. Pauley,* 121 F. 652 (9th Cir. 1903); *Massachusetts Bonding and Insurance Company v.Osborne,*233 Cal.App.2d 648, 43 Cal. Rptr.

> 761 (1965); *Westerhold v Carroll,* 419 S.W.2d 73 (Mo. 1967); *Longview School District No. 112 of Cowlitz County v. Stubbs Electric Co.,* 160 Wash. 465, 295 P. 186 (1931); *Stubs Electric Co. v.Longview School District No. 112 of Cowlitz County,* 153 Wash. 33, 279 P.86 (1929); 11 Appleman, Insurance Law and Practice § 6683 (1944).

*Dannerbeck v. Palmer,* 502 F.2d 686, 689 (9th Circ. 1974) (emphasis added). Because of their preexisting agreement to indemnify Travelers, Nelson and Nelson Construction were obligated to pay the loss to Travelers that Travelers was obligated to pay out under the payment and performance bonds. It is only a coincidence that Nelson Construction was the subcontractor that Travelers was obligated to pay.

The government cites to *Fidelity & Deposit Co. of Maryland v. United States*, 31 Fed. Cl. 540 (erroneously cited by the government as 31 Fed. Cl. 450) for the proposition that the surety is not able to sue the government when it has neither fully paid the subcontractors and suppliers nor performed the completion of the contract. However, the Court in that matter essentially found that the plaintiff was not damaged and that the matter was not ripe. Factually, the *Fidelity & Deposit* case bears no resemblance to the case at bar. However, the *Fidelity & Deposit* case does recognize equitable subrogation as a valid means of endowing standing on a party not otherwise entitled to sue the government, stating:

> First, Fidelity does not fall within the ambit of the equitable doctrine of subrogation. Under this theory, Fidelity would be entitled to sue the Government directly to recover, either from retainage or from sums paid after notice of the surety's interest, amounts the surety has spent on performance or paid to laborers and materialmen. Through the doctrine of subrogation, it would succeed to the rights of the contractor or of the laborers and materialmen against the Government. *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1161 (Fed.Cir.1985); *United States Fidelity & Guaranty Co. v. United States,* 201 Ct. Cl. 1, 9-10, 475 F.2d 1377, 1382 (1973).

*Fidelity & Deposit Co. of Maryland v. U.S.*, 14 Cl.Ct. 421, 422 (Cl.Ct., 1988).

The government attempts to artificially separate the assignment from the equitable subrogation. However, the facts must be viewed as a whole and the right to receive the Contract proceeds traced, from Lemhi (the original owner) to the current owners, Nelson and Nelson Construction. Nelson and Nelson Construction do not allege that they were a party to the Assignment. Travelers received Lemhi's rights through the Assignment. Based on the *Riviera Finance* decision, the validity of this Assignment cannot be disputed. Travelers had the right to receive the proceeds and the proceeds were paid by the government to somebody else. Travelers was wronged by the government, i.e. the government breached the prime Contract by not paying Travelers.

It should be noted that the government concedes the elements of equitable subrogation. The government concedes that Travelers was obligated to pay Nelson. Document 26, p. 5. The government concedes that Nelson as the indemnitor of Travelers was obligated to indemnify Travelers. Id. The government concedes that Nelson was obligated to pay Travelers under the terms of the indemnity agreement. Document 26, p. 5-6. However, without explanation the government concludes that Nelson and Nelson Construction are not subrogated to the rights of Travelers.

Those same rights of the prime contractor to the Contract proceeds which were assigned to Travelers are now owned by Nelson and Nelson Construction by simple operation of law through the doctrine of equitable subrogation.

Nelson and Nelson Construction are today still bearing the loss caused by the government's failure to pay Travelers the contract funds due Travelers. This loss is because of their status as indemnitors under the bonds. Their status as indemnitors under the bonds allows Nelson and Nelson Construction to "step into the shoes" of Travelers, and since Travelers was

wearing Lemhi's shoes, it provides Nelson and Nelson Construction with the rights of the prime contractor, and thus, the substantive jurisdictional basis for this lawsuit.

## CONCLUSION

Nelson and Nelson Construction's claims against the government are premised upon: 1) the valid assignment to Travelers of the prime contractor's rights to the contract proceeds; and 2) Nelson and Nelson Construction being equitably subrogated to the contract rights of Travelers by operation of law. The case law clearly holds that the Tucker Act provides jurisdiction for such claims.

Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss Count One and Two of the Amended Complaint.

Respectfully submitted this 1st day of March, 2007.

TROUT ♦ JONES ♦ GLEDHILL ♦ FUHRMAN, P.A.

/s/ William L. Smith
/s/ Kim J. Trout
P.O. Box 1097
Boise, Idaho 83701
225 N. 9th Street, Suite 820
Telephone: (208) 331-1170
Facsimile: (208) 331-1529

Attorneys for Plaintiffs,
NELSON CONSTRUCTION COMPANY
and DONALD J. NELSON