**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| NELSON CONSTRUCTION COMPANY, an Idaho corporation; and DONALD J. NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>The UNITED STATES operating through the UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, WESTERN FEDERAL LANDS HIGHWAY DIVISION,<br><br>Defendant. | ) | Case No. 05-1205C<br>(Judge Margaret M. Sweeney) |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S THIRD MOTION TO DISMISS [DOCKET #29]

COMES NOW the Plaintiffs, NELSON CONSTRUCTION COMPANY ("NCC") and DONALD J. NELSON ("NELSON"), by and through its counsel of record, the law firm of TROUT ♦ JONES ♦ GLEDHILL ♦ FUHRMAN, P.A., and submits the following in opposition to Defendant's Motion to Dismiss for lack of subject matter jurisdiction [Docket No. 29].[1]

I. Statement of the Issue

Whether this Court has subject matter jurisdiction of this controversy pursuant to the Tucker Act (28 U.S.C. 1491(1)) based on the government's agreement to treat Nelson and NCC as third party beneficiaries of: 1) the agreement between the prime contractor and the

[1] Plaintiffs have previously briefed their opposition to Defendant's Second Motion to Dismiss and hereby rely upon and incorporate herein by reference the arguments advanced therein to the extent that the Government's Third Motion to Dismiss may be duplicative.

Government to modify the remittance terms of the prime contract; and/or 2) the Assignment Agreement assented to by the Government.

II. Statement of the Case

For the purposes of this motion, the following facts must be viewed as true:

1. Early on the Project encountered difficulties. Mr. Ariwite began taking funds properly payable to subcontractors and suppliers and diverting them to other, as yet unknown locations. Nelson was among the subcontractors that were not paid. Nelson submitted claims to Travelers on the payment bond. Travelers gave notice to the government of the situation. The Project ground to a halt. Amended Complaint, ¶¶8 and 11.

2. At the conclusion of the fall construction season, NCC advised Lemhi, Federal Highways, both the CO and Staff Attorney, and Travelers that NCC would perform no further work on the Project unless alternative payment arrangements were made. Amended Complaint, ¶11.

3. On May 22, 2002, Lemhi assigned to Travelers the "money due or to become due under the contract" for the Project (hereinafter "Assignment") (Complaint, Exhibit B), for the express purposes and benefit of NCC and NELSON to assure that payment for future Project performance would be made to Travelers as an escrow holder for the benefit of NCC and NELSON. Amended Complaint, ¶12.

4. On May 28, 2002 at 12:47 p.m., the same Federal Highways CO and Staff Attorney acknowledged receiving notice of the Assignment (Complaint, Exhibit C), and Federal Highways CO and /or the Staff Attorney modified the payee conditions of the Contract to reflect the Assignment, to make future payments due under the Contract to Travelers for the express and implied intended benefit of NELSON and NCC. The assignment to Travelers was made for the

express and implied purpose of satisfying Lemhi's then present and future obligations to NCC for work on the Project. Amended Complaint, ¶13.

5. Following the resumption of work on the Project in the Spring of 2002, from June until November 2002, Federal Highways paid, by EFT or otherwise, six consecutive payments pursuant to Lemhi Applications for Payment directly to Travelers, for monies due under the Contract, as agreed in the Assignment acknowledged by the same Federal Highways CO and Staff Attorney. Amended Complaint, ¶15.

6. Subsequent to the Project completion, Lemhi, NCC, and Federal Highways entered into negotiations for an equitable adjustment to the Contract for the purposes of compensating primarily NCC for additional costs due to a design error, which error was discovered during construction. The same Federal Highways CO and Staff Attorney were directly involved in the equitable adjustment negotiations. Amended Complaint, ¶16.

7. On or about January 28, 2003, Lemhi as prime contractor and Federal Highways entered into a Settlement Agreement whereby Lemhi agreed to settle all claims against Federal Highways related to the Project in exchange for $614,270.67 (Complaint, Exhibit D). Amended Complaint, ¶17.

8. Because of the Assignment, Travelers, not Lemhi, was entitled to receive the payment of said $614,270.67. Amended Complaint, ¶18.

9. Despite having knowledge of the Assignment, and despite the same Federal Highways CO and Staff Attorney's material participation in the modification of the payee provisions of the Contract agreeing to pay the Contract proceeds to Travelers, and despite Federal Highways' history of paying Travelers pursuant to the Assignment, the Federal Highways CO and/or Staff Attorney worked directly with Ariwite and Lemhi, and modified the

payment arrangement to make EFT payment directly to a new bank account established by Ariwite in Utah, not previously used by Ariwite or Lemhi for this project. Thereafter with no notice to Travelers, NCC or NELSON, the CO and/or the Staff Attorney directed payment of the equitable adjustment to the Contract be made directly to the new bank account in Utah established by Lemhi, said payment in the amount of $614,270.67. Amended Complaint, ¶19.

10. By reason of the rights of NELSON and NCC as intended beneficiaries of the modification of the payee provisions of the Contract pursuant to the Lemhi Assignment, NCC and NELSON, are entitled to payment from Federal Highways in the amount of $269,270.67. Amended Complaint, ¶26.

11. NCC and NELSON, as a condition to returning to the Project for completion in the spring of 2002, requested that Travelers assume the role of escrow holder for all payments due and payable to Lemhi under and pursuant to the Contract. Amended Complaint, ¶38.

12. On May 22, 2002, Lemhi assigned its rights to payment under and pursuant to the Contract to Travelers. Federal Highways, through its CO and Legal Counsel, acknowledged and agreed to the assignment to Travelers and understood that Travelers would be acting as an escrow agent for purposes of distributing payments to NCC and NELSON, as part of a class of creditor beneficiaries for present or future obligations of Lemhi on the Project, to be paid by and through Travelers, that would otherwise have been the responsibility of Lemhi. Amended Complaint, ¶39.

13. Federal Highways knew, after having made six (6) consecutive payments to Travelers pursuant to the Assignment, that NCC and NELSON relied, and had a right to rely on the remaining Contract payments being made to Travelers as the escrow holder for purposes of

paying NCC and NELSON's money due under and pursuant to the Contract. Amended Complaint, ¶40.

14. Federal Highways, its CO and/or Staff Attorney, willfully and intentionally deviated from the payment arrangement pursuant to the Assignment to deprive and damage NCC and NELSON, all to NCC and NELSON's damage in a sum not less than $269,270.67. Amended Complaint, ¶41.

## ARGUMENT

### I. Standard of Review

When deciding a motion to dismiss based upon lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In resolving a motion to dismiss for failure to state a claim, the Court must assume the facts in the complaint are true and "indulge in all reasonable inferences in favor of the non-movant," and the complaint should not be dismissed unless it is "beyond doubt that a plaintiff could prove no set of facts which would entitle him to relief." *Sommers Oil Co. v. U.S.*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (quoting *Hamlet v. U.S.*, 873 F.2d 1414 (Fed. Cir. 1989)) (quoted by Defendant).

### II. Jurisdiction Over this Controversy is Proper in this Court

Jurisdiction is proper in this Court because Nelson and NCC are intended third party beneficiaries of the modified remittance clause and Assignment Agreement.

### A. Tucker Act Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1491.

> The Tucker Act confers jurisdiction on the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the

> Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States ....” 28 U.S.C. § 1491(a)(1). Generally, subcontractors cannot sue the Government directly due to a lack of privity with the United States. *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1551 (Fed.Cir.1983). ***It is settled law in this circuit, however, that an intended third-party beneficiary of a government contract may sue under the Tucker Act.*** *Flexfab, LLC v. United States,* 62 Fed.Cl. 139, 144-45 (2004); *Erikson v. United States,* 12 Cl.Ct. 754, 757 (1987); *Hebah v. United States,* 192 Ct.Cl. 785, 792, 428 F.2d 1334, 1339 (1970); *Maneely v. United States,* 68 Ct.Cl. 623, 629, 1929 WL 2450 (1929).

*JGB Enterprises, Inc. v. U.S.*, 63 Fed.Cl. 319, 330 (Fed.Cl., 2004) (emphasis added).

B. Nelson and NCC Are Third Party Beneficiaries

It cannot be reasonably disputed that, when viewed under the applicable standard of review, Nelson and NCC were (either expressly or implicitly) intended beneficiaries of the modified remittance clause and the Assignment Agreement.

> The test to determine third-party beneficiary status is whether the contract reflects the express or implied intention of the contracting parties to benefit the third-party. *Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997). “One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him.” *Id.* at 1273-74 (citing Restatement (Second) of ContractsSSS § 302(1)(b) cmt. d); *Frank & Breslow, LLP v. United States,* 43 Fed.Cl. 65, 67 (1999) (“The test for a third party beneficiary relationship ... is one of reasonable reliance”). Despite the Government's many arguments to the contrary, this is an objective test. *See Firestone Tire & Rubber Co. v. United States,* 195 Ct.Cl. 21, 444 F.2d 547, 551 (1971); *ITT Arctic Servs., Inc. v. United States,* 207 Ct.Cl. 743, 524 F.2d 680, 684 (1975).

*JGB Enterprises*, 63 Fed.Cl. at 331.

> In ruling on a motion to dismiss for lack of subject matter jurisdiction, “the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings.” *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004) (citing *Shearin v. United States,* 992 F.2d 1195, 1195-96 (Fed.Cir.1993)); *see also* RCFC 12(b)(1).

*Sindram v. U.S.*, 67 Fed.Cl. 788, 792 (Fed.Cl.,2005). The intent of a contract to benefit a third party may be implicit. *Caguas Central Federal Savings Bank v. United States*, 215 F.3d 1304, 1309 (Fed.Cir.2000).

> "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted thereby." *Montana,* 124 F.3d at 1273. "The court carefully must distinguish between incidental and indirect beneficiaries and direct beneficiaries, only the latter of which qualifies for third-party beneficiary status." *Guardsman Elevator Co. v. United States,* 50 Fed.Cl. 577, 582 (2001) (citing *Schuerman v. United States,* 30 Fed.Cl. 420, 433 (1994)); *see also German Alliance Insurance Co. v. Home Water Supply Co.,* 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195 (1912). ***Whether a plaintiff is a third-party beneficiary is a mixed question of law and fact.*** *Guardsman,* 50 Fed.Cl. at 582 (citing *Glass v. United States,* 258 F.3d 1349, 1353 (Fed.Cir.2001)). "***When the intent to benefit the third party is not expressly stated in the contract, evidence thereof may be adduced.***" *Roedler,* 255 F.3d at 1352.

*JGB Enterprises*, 63 Fed.Cl. at 331 -332 (emphasis added). Discovery has not commenced in this matter to date.[2] However, Nelson and NCC have alleged specific facts sufficient to survive the Government's 12(b)(1) motion. For example, the payee conditions of the Contract were modified to protect the interests of Nelson, NCC and other subcontractors. This was done to protect the interests of the subcontractors and to ensure that the Project was completed. Further, the rights to the Contract proceeds were assigned to Travelers to hold in escrow and distribute to those subcontractors that were ultimately entitled to the same.

Relevant case law provides that Nelson and NCC as "creditor beneficiaries" of the Prime Contract are entitled to sue under the original contact, stating:

> In the case of a contract in which the promisee (Capital City) provides goods or services to the promisor (the Government), it has long been settled that a clause providing for the promisor to pay the proceeds of the contract to a third party

[2] Defendant seems to rely on the alleged lack of specific documents as mandating the dismissal of this action, however, it must be noted that under the applicable standard of review the allegations of the Amended Complaint must be accepted as true. Just because documents are not specifically attached to the Amended Complaint, does not mean those documents do not exist. Further, Plaintiffs have not been allowed to engage in the discovery process to date and are confident that the process will reveal additional documents evidencing the third party beneficiary agreement.

> (JGB) is enforceable by the third party where the payment is intended to satisfy a present or future liability of the promisee to the third party. *D & H Distrib.,* 102 F.3d at 546-47. ***The third-party beneficiary in that situation has traditionally been referred to as a "creditor beneficiary" and has been accorded full rights to sue under the original contract.*** *Id.* at 547 (citing 4 Arthur Linton Corbin, Corbin on Contracts § 787 (1951); 3 E. Allen Farnsworth, Farnsworth on Contracts § 10.2 (1990); 2 S amuel Williston, A Treatise on the Law of Contracts §§ 361-64, 381 (Walter H.E. Jaeger ed., 3d ed.1959)). The same principle would apply if the payment clause provided that a portion of the proceeds were to be paid to the promisee and a portion to the third party. *Id.* Where a contract's remittance clause was changed to give a subcontractor control over contract payments from the Government, the Federal Circuit and the Court of Federal Claims have held that the subcontractors qualified as third-party beneficiaries with the right to recover directly from the Government. *See D & H Distrib.,* 102 F.3d at 547-48; *Riviera Finance of Texas, Inc. v. United States,* 58 Fed.Cl. 528, 532-33 (2003); *Norwest,* 37 Fed.Cl. at 610.

*Id.*, 63 Fed.Cl. at 332 (emphasis added). Further, Nelson and NCC need not be specifically named in the remittance clause.

> A third-party beneficiary need not be specifically or individually identified in the contract, but must fall within a class that the contract clearly intends to benefit. *See Montana,* 124 F.3d at 1273.

*Sallee v. U.S.*, 41 Fed.Cl. 509, *514 (Fed.Cl.,1998) (cited by Defendant).

"In deciding a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor."" *Daluz v. U.S.*, 73 Fed.Cl. 129, 132 (Fed.Cl.,2006) (citing *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995)). When one considers under the applicable standard of review the factual allegations in the case at bar, one must conclude that Nelson and NCC are entitled to proceed with the subject lawsuit.

## CONCLUSION

Nelson and NCC have alleged that the remittance clause (payee conditions) was modified to benefit Nelson and NCC, among other creditors of the prime contractor. This was done with the express purpose of benefiting Nelson and NCC. Further, the Assignment Agreement was assented to by the Government and complied with by making six payments to Travelers over a

period of several months. Nelson and NCC respectfully request that the Court deny the Government's Third Motion to Dismiss.

DATED this 6th day of April, 2007.

TROUT ♦ JONES ♦ GLEDHILL ♦ FUHRMAN, P.A.

/s/

Kim J. Trout
William L. Smith
P.O. Box 1097
Boise, Idaho 83701
225 N. 9th St., Ste. 820
Boise, Idaho 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
Attorneys for Plaintiffs,
NELSON CONSTRUCTION COMPANY and
DONALD J. NELSON